### AFFIDAVIT IN SUPPORT OF AN APPLICATION
### FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Rocco Rauseo, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent (SA) with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been employed as a Criminal Investigator/Special Agent with HSI since January 2022 and I am currently assigned to Special Agent in Charge (SAC) New England's Child Exploitation/Forensics Group located in Boston, MA. During my employment with HSI, I received six months of full-time, formalized training at the Federal Law Enforcement Training Center (FLETC) located in Glynco, GA. Prior to being employed by HSI, I held various law enforcement positions within DHS since May 2007, including Supervisory Detention and Deportation Officer and Lead Border Patrol Agent. As part of my duties, I am authorized to investigate violations of the laws of the United States, including criminal violations relating to child exploitation, child pornography, coercion and enticement, and transportation of minors, including but not limited, to violations of 18 U.S.C. §§ 2422, 2251, 2252, and 2252A. I have received training in the investigation of child pornography, child exploitation, and transportation of minors. In addition to this training, I have had the opportunity to speak with and observe several other federal, state, and local law enforcement officers who have extensive experience in child exploitation investigations. I have participated in investigations of violations of those statutes to include assistance with the execution of federal search warrants in connection with such investigations. During training and in the course of my duties I have had the

opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256).

2. I submit this affidavit in support of a criminal complaint charging Stacie Marie LAUGHTON, (YOB 1984), with one count of sexual exploitation of children (and aiding and abetting), in violation of 18 U.S.C. §§ 2251 and 2.

3. The statements in this affidavit are based in part on information provided by federal and state agents and law enforcement officers; written reports about this investigation that I have received, directly or indirectly, from other law enforcement agents; my personal observations; review of records; independent investigation and analysis by federal agents/analysts; and my experience, training, and background as a Special Agent with HSI.

4. Because this affidavit is being submitted for the limited purpose of securing a complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Stacie Marie LAUGHTON committed violations of 18 U.S.C. §§ 2251 and 2. Where statements of others are set forth in this affidavit, they are set forth in substance and in part and not verbatim unless indicated otherwise.

## STATEMENT OF PROBABLE CAUSE

5. On June 20, 2023, the Nashua Police Department (NPD) responded to a report that LAUGHTON had shown child sexual abuse images to other adults. One adult (hereinafter, PERSON 2)[1] reported that on June 20, 2023, LAUGHTON disclosed that her former intimate partner, Lindsay GROVES, sent LAUGHTON inappropriate images of children. According to PERSON 2, LAUGHTON then showed PERSON 2 three images, which were

---

[1] PERSON 2 and PERSON 3 are known to law enforcement.

on LAUGHTON's phone in a text conversation with a contact titled "Lindsay." Upon viewing the three images, PERSON 2 recognized them as children and that each image depicted a separate child. PERSON 2 described each image as depicting children with their genitals exposed.

6. The responding NPD officer interviewed another adult (hereinafter, PERSON 3), who reported that on June 16, 2023, LAUGHTON disclosed that GROVES sent her inappropriate images of children. LAUGHTON then sent PERSON 3 four images of nude children by text message, which PERSON 3 deleted. During the interview on June 20, 2023, PERSON 3 was able to recover the images to provide them to the responding NPD officer. The officer observed that the images were of naked children and also observed a text, purportedly from LAUGHTON, that read, "I don't like that I have these but I wanted to show you the proof. I am not a kid pervert."

7. NPD detectives conducted a voluntary interview with PERSON 3 on that same date, June 20, 2023, at the Nashua Police Department. During the interview, PERSON 3 showed the four images to the detectives. I have since reviewed the images and believe, based on my training and experience and on all of the information included in this affidavit, that they constitute child pornography. They are described as follows:[2]

    a. *Image 1*: The image's focal point is a prepubescent child's penis; the child's face was not visible, but based on his size and stature, he appeared to be

---

[2] I am aware that the "preferred practice" in the First Circuit is that a magistrate judge view images that agents believe constitute child pornography by virtue of their lascivious exhibition of a child's genitals. *United States v. Brunette*, 256 F.3d 14, 17-19 (1st Cir. 2001) (affiant's "legal conclusion parroting the statutory definition […] absent any descriptive support and without an independent review of the images" insufficient basis for determination of probable cause). Here, however, the descriptions offered "convey to the magistrate more than [my] mere opinion that the images constitute child pornography." *United States v. Burdulis*, 753 F.3d 255, 261 (1st Cir. 2014)

(conservatively) under the age of five. The child had his blue jeans pulled below his knees. The child was wearing a yellow shirt. A small portion of the photographer's hand was visible in the top left corner of the photo. The background of the image depicted a gray tiled floor. There was a white toilet and a gray stepstool visible on the left side of the image in the background.

b. *Image 2*: The image's focal point is a prepubescent child's vaginal area; the child's face was not visible, but based on her size and stature, she appeared to be (conservatively) under the age of five. The child had her blue pants pulled below her knees. The background of the image contained gray tiled flooring.

c. *Image 3*: The image's focal point is a prepubescent child's penis; the child's face was not visible, but based on his size and stature, he appeared to be (conservatively) under the age of five. The child's red pants and dark colored underwear were pulled below the child's knees. The photographer's

---

(distinguishing *Brunette*). The children described herein are conservatively estimated to be under five years old – in all events, younger than eighteen. Furthermore, the descriptions of the files here are sufficiently specific as to the age and appearance of the alleged children as well as the nature of the "sexually explicit conduct" pictured in each file, such that the Court need not view the files to find that they depict child pornography. Specifically, in each image, the photographer (who I believe to be GROVES) is posing the child inappropriately such that she can focus the camera on each child's unclothed genitalia, and appears to be reaching towards one of the child's penises. *See United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images *or provide a sufficiently specific description of the images* to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added); *see also United States v. LaFortune*, 520 F.3d 50, 56 (1st Cir. 2008) (similarly emphasizing *Syphers* court's use of "or" in describing the *Brunette* "best practice"). Where I have included such nonconclusory, sufficiently specific descriptions, this Court need not view the imagery to find that they depict child pornography. Nonetheless, the described imagery is available for review at the Court's request.

4

     black and pink shoes were visible in the bottom foreground of the image. The photographer's left ankle was visible. The photographer had what appeared to be a black star-like tattoo on the left ankle. The background of the photograph contained gray tiled floor and a white toilet.

  d. *Image 4*: The image's focal point is a prepubescent child's penis; the child's face was not visible, but based on his size and stature, he appeared to be (conservatively) under the age of five. The child's pants were pulled below his knees. The child was wearing a gray, zip-up top with dinosaurs pulled up towards the child's chest. The photographer's left hand appeared to be reaching towards the child's penis. The background of the photograph depicted gray tiled floor and a gray step-up stool.

8. Also on June 20, 2023, NPD conducted a voluntary interview with LAUGHTON in Derry, New Hampshire. The interview was recorded and is merely summarized here. LAUGHTON reported that she was previously in an intimate relationship with GROVES. LAUGHTON also reported that GROVES is a teacher or childcare provider at Creative Minds in Tyngsborough, Massachusetts. LAUGHTON further disclosed that she received text messages from GROVES's iMessage account associated with GROVES's telephone number during the previous two weeks, which included sexually explicit images of GROVES and the four nude images of children's genitalia described above. LAUGHTON identified GROVES as the photographer of the images of the children, specifically citing an ankle tattoo and the photographer's hand visible in separate images.

9. Based in part on the foregoing information, NPD obtained a search warrant from the Hillsborough Superior Court for GROVES's residence in Hudson, NH. Among other

things, the search warrant authorized the seizure and search of electronic devices for evidence of possession/distribution/manufacture of child sexual abuse images in violation of New Hampshire law.

10. The search warrant was executed at approximately 2:00 a.m. on June 21, 2023, at GROVES's home in Hudson, New Hampshire. GROVES and her parents were home and were determined to be the only residents of the address.

11. GROVES waived her rights pursuant to *Miranda* and agreed to be interviewed. The interview was recorded and is merely summarized here.

12. GROVES told NPD that she has worked as an early childhood teacher at Creative Minds located in Tyngsborough, Massachusetts for approximately six years. She was primarily assigned to the pre-school room within the center, which encompasses children from two years and nine months old to three/four years old.

13. GROVES confirmed that she and LAUGHTON were previously in an intimate relationship. GROVES indicated she and LAUGHTON had a sexualized text message conversation in May/June 2022 wherein LAUGHTON asked GROVES to capture nude images of children from Creative Minds.

14. GROVES estimated that she took multiple images of prepubescent children within a private bathroom of the center between May/June 2022 and June 2023. GROVES described the bathroom as one of the only restrooms in the facility with a full-sized door. There were other bathrooms within the center that had "half-doors" that allowed the staff to partially see into the bathroom for safety purposes.

15. GROVES told investigators that she directed the children to pull their shirts/tops towards their heads where their vision would be obscured while their pants were pulled towards

|    | |
|----|-|
|    | their ankles as she captured images of their genitalia with her iPhone. GROVES said she used natural bathroom breaks for the children (routine diaper/pull-up changes prior to "naptime") to capture the images. GROVES recalled capturing an image of a male child wherein LAUGHTON directed GROVES to touch the child's penis in the photograph. GROVES reported that she placed her left hand adjacent to the child's penis as she captured the image. GROVES said she sent the images of children captured from her iPhone to LAUGHTON's iPhone for LAUGHTON's sexual gratification. |
| 16. | GROVES was shown a cropped version of the image described above wherein a tattoo is visible on the left ankle of an adult in the frame. She identified herself as the photographer of that image and confirmed she had the same star tattoo on her left ankle. Investigators observed a star tattoo, which appeared to match the tattoo in the photographs described above, on GROVES's left ankle. |
| 17. | During the search warrant, investigators seized an iPhone 13, an iPad, and two pairs of shoes that appeared to be the same brand, style, and color as those depicted in the photographs described above. All of these items were seized from the bedroom determined to be GROVES's exclusive bedroom. |
| 18. | On June 21, 2023, HSI obtained a federal warrant authorizing the search of the iPhone 13 and iPad seized from GROVES's residence for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2251 and 18 U.S.C. § 2252A. |
| 19. | Preliminary forensic review of the phone revealed over 10,000 texts exchanged between LAUGHTON and GROVES from May 10, 2023 to June 16, 2023. The messages include discussions of past sexual encounters, sharing of expenses, joint access to certain accounts, explicit descriptions of sex with each other and others (including children), exchanges in |

which they profess their love for each other, and exchanges in which they argue about their relationship. On the last date of the recovered messages, June 16, 2023, it appears that LAUGHTON and GROVES end their relationship.

20. On or about June 7, 2023, at 2:39PM, the following text exchange ensued:

> GROVES: I'm horny right now
>
> LAUGHTON: I was asking because I know we've had some back-and-forth and I know we initially said we do nothing with kids ever again and you said you were afraid that if we had kids if they would go back and tell the parents the same with the kids you work with when I was trying to ask you do you seriously see no problem with sex with children like I had always wanted to put my dick inside one of the little girls you work with, but you said they were too little and then you said I could so I don't know I know you're horny I'm trying to get clean and I already have the hot water running baby.
>
> GROVES: I want to do it with the kids at work
>
> GROVES: than you can put your dick inside them
>
> GROVES: I wasn't being serious about the kids running back and telling their parents
>
> GROVES: Plus I want to do it with kids who use to come here cause they can enjoy it
>
> LAUGHTON: Well, I know but you were afraid that the kids at work might tell their parents and we said we would do it if we knew we were not gonna get caught and I was just wondering like like basically you have no problem with that…
>
> ………………
>
> GROVES: You mentioned how I said I was afraid that the kids will run to the parents if we do it with them I wasn't being serious
>
> LAUGHTON: OK because like I get concerned about that cause I don't wanna get caught if we do
>
> GROVES: I was joking anyway and you took me serious
>
> LAUGHTON: Oh I know but I just don't wanna get in trouble. I mean I want to do what we want to do because we like it and we approve of it but others think this is wrong. Lots of parents don't like people touching their kids and it is against the law

8

21. On or about June 7, 2023, at 3:55PM the following text message ensues:

> LAUGHTON: So you would let me fuck the little girls that you work with
>
> LAUGHTON: And you're not screenshot Ing this and possibly use it against me at all like we're both on the same page we both want to do this and he would let me put my dick inside those little girls I mean what if my dick is too big I mean its big but its not that big I think you could fit in there and if it doesn't fit all the way then I could stop I don't want to hurt them
>
> GROVES: If they want your dick inside them
>
> LAUGHTON: Would you let the little girls suck my dick
>
> GROVES: It's their choice

22. On or about June 13, 2023, at 6:58AM, the following text exchange ensues:

> LAUGHTON: Boy, it's a bummer though I know you were just kidding about the girls at work but I thought that they were going to tell people and it would've been just the parents that you knew of the kids that weren't there anymore and I also thought it would be OK to fuck them but I mean if a dildo of my size can go in a girl that you were playing with my dick should be able to comfortably go in the girls at work but I guess the what you said we're only want me to rub it, so I guess that's what I'll do
>
> GROVES: They do want a dildo in them
>
> LAUGHTON: How do you know all this because I know you talk to the kids but you talk sexual with the kids
>
> GROVES: That should of given you a hint what they wanted
>
> LAUGHTON: I have to try to find all the dildos that I have. I think I lost a lot of them in the move. I have the big mechanical one which is too big for them. Then I have another little vibrating thing that's had like like this a silicone piece on it that had like ribs and other things on it that I can't find but I have the internal peace that I'm still going to pussy that can vibrate and it has different settings on it. It's just like a like a long device that could be used a loan or could've been used with that thing over the top so I have two but I just have the big one in the smaller vibrating things.

9

23. Later that day, on June 13, 2023, at 1:32PM, LAUGHTON writes, "So basically anything sexual I ask of you your ok with including the kid stuff." GROVES replies affirmatively.

24. On or about June 14, 2023, at 7:40AM, the following exchange ensues:

    LAUGHTON: And I'm sorry I talk so much but the other thing I think about is do you think God is OK with us being bad girls I mean I know he created humans to be sexual beings and some would say it's not OK to have sex outside of a relationship or have you know the type of sexual experiences we wanna have but then again, someone say having sex with kids is a bad thing and God never addresses sex with children in the Bible and God never really condemns say different sexual lifestyles but what do you think? Do you think we still have a place in heaven? Do you think God would still be OK with me being a minister and also, I was being bad.

    GROVES: Yes god is ok with it and we will still go to heaven and he thinks you be a great minister.

    LAUGHTON: I mean, I hate to put it out this way what do you think? God is OK with us sucking dick in your pussies the way we want to and the stuff with the kids.

    GROVES: I said god will be ok with all of that

25. The messages also include discussion about, and transfer of, explicit photographs that GROVES had taken of children at her place of employment. Messages in which LAUGHTON receives child pornography from GROVES include the following:

    a. On or about June 13, 2023, at 2:53PM, GROVES sent LAUGHTON two digital images. The first photo depicted a prepubescent male child who, based on his size, stature, lack of pubic hair, and lack of development, appears to be approximately 3 to 5 years old (hereinafter MINOR 1). MINOR 1 is standing with his pants pulled down around his ankles and his shirt pulled up, exposing his genitals. The image also shows a pair of black and pink shoes along with a star tattoo on what appears to be the photographer's ankle. This photograph appears to be the same as Image 3

        described in Paragraph 7c. HSI agents confirmed with the parent of MINOR 1 that MINOR 1 is a 3-year-old child who was a student at Creative Minds.

    b.    The second digital image depicted a prepubescent female child who, based on her size, stature, lack of pubic hair, and lack of development, appears to be approximately 3 to 5 years old (hereinafter MINOR 2). MINOR 2 is standing with her pants pulled down, exposing her vaginal area. This photograph appears to be the same as Image 2 described in Paragraph 7b. HSI agents confirmed with the parent of MINOR 2 that MINOR 2 is a 3-year-old child who was a student at Creative Minds.

26.    Upon sending the images of MINOR 1 and MINOR 2, the following text exchange between GROVES and LAUGHTON ensues:

    LAUGHTON: I want to pass baby please
    GROVES: No
    GROVES: I took these for you today so I'm horny.
    LAUGHTON: Oh you said sexting
    LAUGHTON: Is that a little girl
    GROVES: I wasn't being serious
    GROVES: Yes that's a little girl
    LAUGHTON: i like that I would like to see more of the pussy but I like that it fucking hot
    LAUGHTON: Is that one of the girls we get to play with
    LAUGHTON: That little boy pulling up his shirt looks like
    GROVES: The boy was getting a diaper on that's why his shirt is up
    LAUGHTON: Oh
    LAUGHTON: Did the girl give you an issue
    GROVES: No
    GROVES: The boy didn't either

27. In reference to the image of MINOR 2, at 3:11PM, the following text exchange ensues:

    LAUGHTON: That girl looks sweet

    GROVES: Yeah

    LAUGHTON: Do you think she would like sucking me and me rubbing my dick on her?

    GROVES: Yeah

    LAUGHTON: It's just a bummer she wont let me put my dick inside of her

    GROVES: She's not even 3 yet

    LAUGHTON: Yeah, I know

28. On or about June 14, 2023, at 2:25PM, GROVES sent LAUGHTON a digital image that depicted a prepubescent male child who, based on his size, stature, lack of pubic hair, and lack of development, appears to be approximately 3 to 5 years old (hereinafter MINOR 3). HSI agents confirmed with the parent of MINOR 3 that MINOR 3 is a 3-year-old child who was a student at Creative Minds. This photograph appears to be the same as Image 1 described in Paragraph 7a. GROVES writes, "I want to do this with you with one of my kids." At 2:28PM, LAUGHTON writes, "I also need to be honest I mean yes that picture was hot of that little boy but you probably have gotten the picture by now that I prefer a little girls, but he is cute. I'd like to see you put your hand around his penis." At 2:28, GROVES writes, "I took that picture a couple minutes ago."

29. On or about June 15, 2023, at 9:01AM, LAUGHTON writes, "Do you like taking kid pics for me" and GROVES responds affirmatively. She asks, "If you take one or 2 today can you hold the dick or put your finger in the girl" and GROVES responds affirmatively.

LAUGHTON writes, "Do you think you can do any kissing there dick or kiss the pussy or someplace" and GROVES responds "I'll do my best."

30. On or about June 16, 2023, at 6:29AM, the following text exchange between GROVES and LAUGHTON ensues:

> LAUGHTON: Oh you said you got a picture last night of one of the little boys but you didn't send it.
> GROVES: I forgot.
> LAUGHTON: It's OK Sweet Pea
> GROVES: I'm ready to do our morning call
> LAUGHTON: Do you still have that picture?

31. At 6:33AM, GROVES sent LAUGHTON a digital image that depicts MINOR 1 standing with his pants pulled down and shirt pulled up. An individual, who GROVES confirmed is her, reaches a hand in the direction of the child's genitalia. This photograph appears to be the same as Image 4 described in Paragraph 7d.

32. On June 22, 2023, NPD conducted another recorded voluntary interview with LAUGHTON in Nashua, New Hampshire. LAUGHTON waived her rights pursuant to *Miranda* and agreed to be interviewed. LAUGHTON said that she had talked to GROVES about photographing the minors in GROVES's care at Creative Minds.

33. LAUGHTON described her conduct as feeding GROVES's sexual attraction to minors. In reference to the discussions LAUGHTON had with GROVES and the pictures taken by GROVES, LAUGHTON stated that she should not have "tried to coax" GROVES.

## CONCLUSION

34. In summary, from at least May 10, 2023 to June 16, 2023, LAUGHTON and GROVES were involved in an intimate relationship in which they discussed their sexual attraction to and potential sexual involvement with children, as well as specific discussion about

GROVES taking explicit photographs of minors in GROVES's care for LAUGHTON. Between June 13 and June 16, 2023, GROVES sent LAUGHTON nude images of MINORS 1, 2, and 3, which GROVES had taken while she was with the minors at Creative Minds. Based on the discussion between LAUGHTON and GROVES in the periods preceding and following the distribution of each of the images of MINORS 1, 2, and 3, as outlined in Paragraphs 25-31, I submit that the explicit images were taken and shared at least in part for LAUGHTON's sexual gratification and, at times, at her explicit direction. For example, after GROVES sent the images of MINORS 1 and 2 on July 13, 2023, LAUGHTON told GROVES that she "would like to see more of the pussy," that she liked the image of MINOR 2, and that it was "hot." Similarly, LAUGHTON directed GROVES to photograph herself holding the penis of a male child or putting her finger in a female child and asked whether GROVES would be able to touch one of the children with her mouth; GROVES responded that she would "do [her] best" and thereafter sent LAUGHTON a photograph with her hand near the genitals of MINOR 1.

35. Therefore, based on all of the foregoing information, I submit that there is probable cause to believe that, from on or about June 13, 2023 through on or about June 16, 2023, Stacie Marie LAUGHTON employed, used, persuaded, induced, enticed, and coerced a minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and attempted to do so, and knew and had reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by

computer, and the visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, all in violation of Title 18 United States Code, Sections 2251(a) and (e) and Section 2.

*Rocco Rauseo* DLC
Rocco Rauseo
Special Agent, HSI

Sworn to before me telephonically in accordance with Fed. Rule Crim. P. 4.1 on this 17th day of July, 2023.

Hon. DONALD L. CABELL
Chief United States Magistrate Judge

15